1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC.; TEVA CANADA INNOVATION G.P.-S.E.N.C., | Case No.: SACV 13-00308-CJC(RNBx) |
| Plaintiffs, | |
| vs. | ORDER DENYING PLAINTIFFS' MOTION TO REMAND; DENYING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION; AND GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |
| HEALTH IQ, LLC; AMGEN INC.; AMGEN USA INC.; AMGEN CANADA INC.; AMGEN INTERNATIONAL INC.; and AMGEN (EUROPE) GMBH, | |
| Defendants. | |

## INTRODUCTION

This case involves alleged "industrial espionage" of confidential trade information belonging to Plaintiffs Teva Pharmaceuticals USA, Inc. and Teva Canada G.P.-S.E.N.C. (together, "Teva").  Teva alleges that Defendant Health IQ, LLC ("Health IQ") conducted the intelligence-gathering activities on behalf of Defendants Amgen Inc.,

Amgen USA Inc., Amgen International Inc., Amgen Canada Inc., and Amgen (Europe) GmbH (collectively, the "Amgen Defendants"). Before the Court is Teva's Motion to Remand, (Dkt. No. 34), the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Amgen Canada Inc. ("Amgen Canada"), (Dkt. No. 28), the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Amgen (Europe) GmbH ("Amgen Europe"), (Dkt. No. 54), and the Motion to Dismiss for Failure to State a Claim filed by Defendants Amgen Inc., Amgen USA Inc., and Amgen International Inc. and joined by Defendants Amgen Europe and Amgen Canada, (Dkt. No. 27). For the reasons discussed below, Teva's Motion to Remand is DENIED. The Motions to Dismiss for Lack of Personal Jurisdiction brought by Amgen Canada and Amgen Europe are DENIED. The Motion to Dismiss for Failure to State a Claim by the Amgen Defendants is GRANTED.

**BACKGROUND**

Teva initially filed this action in Orange County Superior Court on February 16, 2011, against Health IQ and one of its employees, Susan Rice. The original complaint alleged three causes of action under California law: (1) violation of California's Unfair Competition Law ("UCL"), (2) violation of the California Uniform Trade Secrets Act ("CUTSA"), and (3) common law fraud. Teva subsequently added the Amgen Defendants to this action and filed its Second Amended Complaint ("SAC") in February 2013, pleading three additional claims: (4) "deceit" under California Civil Code sections 1709 and 1710, (5) tortious interference with prospective business advantage, and (6) civil conspiracy. (Dkt. No. 2, [SAC].)

According to the allegations in the SAC, Teva, the world's largest generic drug manufacturer, has over the past decade entered the emerging market for generic versions of a class of drugs called "biologics." (SAC ¶ 1.) The biologics at issue here, known as human granulocyte colony selection factor ("G-CSF"), are used to replenish depleted

white blood cells in cancer patients undergoing chemotherapy.  (SAC ¶ 4.)  Amgen Inc. ("Amgen") is a biopharmaceutical company that holds patents on G-CSF biologics marketed in the United States as Neupogen and Neulasta.  (SAC ¶¶ 26–27.)  Neupogen has been approved in the United States since 1991, and Amgen's patent on the drug expires on December 10, 2013.  (Dkt. No. 48 ["Defs.' Opp'n to Remand Mot."] at 4.)  Teva alleges that from 2007 to 2011, the Amgen Defendants, in anticipation of the looming expiration of their patent, retained the "competitive intelligence consulting firm" Health IQ to wrongfully acquire Teva's proprietary confidential information pertaining to three of its G-CSF biologics.  (SAC ¶¶ 2–4, 21.)  Teva alleges that individuals from Health IQ, acting on behalf of the Amgen Defendants, misrepresented themselves in telephone calls to Teva employees in order to gain access to Teva's confidential trade information.  (SAC ¶ 4.)  Teva alleges, for example, that Health IQ employees posed as physicians and graduate students and attempted to solicit information regarding Teva's marketing, regulatory approval, and pricing strategy for three G-CSF products, trade named Neutroval, Neugranin, and XM22.  (SAC ¶¶ 4–5.)

This is not the first lawsuit between the parties.  In July 2011, Teva and Amgen entered into a settlement agreement resolving an earlier action the parties were litigating before the United States District Court for the Eastern District of Pennsylvania.  (Dkt. No. 27 ["Defs.' Mot. to Dismiss"] at 2–3; Exhs. A–C.)  Teva filed the earlier action to obtain a declaratory judgment that its Neutroval product, which it wanted to sell in the U.S. market, did not infringe Amgen's patents.  (*Id.*)  Amgen brought a counterclaim for patent infringement.  (*Id.*)  Both parties moved for summary judgment, but a settlement was reached before the motions were heard.  (*See id.* Exh. A. )  In the settlement agreement and stipulation filed with the district court, Teva stipulated that Amgen's patents were valid and enforceable, that its Neutroval product infringed those patents, and that it would not sell or market Neutroval in the United States prior to November 10, 2013.  (*Id.* at 2–3; Exhs. B–C.)  The parties jointly stipulated to entry of final judgment

and a permanent injunction against Teva.  (*Id.*)  Upon consideration of the joint stipulation and the parties' summary judgment motions, the district court issued a final order incorporating the terms of the settlement agreement.  (*See id.* Exh. A–B.)  The order approved the stipulation, found that Amgen's patents were valid and enforceable and the sale of Neutroval infringed those patents, and permanently enjoined Teva from selling Neutroval in the United States until November 10, 2013.  (*Id.*)

The Amgen Defendants removed the instant action to this Court on the grounds that Teva's fifth cause of action for tortious interference with prospective economic advantage necessarily seeks relief from the federal judgment in the patent action.  (*See* Dkt. No. 1, Notice of Removal ["NOR"]; Defs.' Opp'n to Remand Mot. at 3–11.)  In its tortious interference claim, Teva alleges that Amgen was able to "extract a settlement agreement of the patent action on favorable terms" because Amgen had obtained Teva's "confidential, proprietary, and competitively sensitive information" through the allegedly tortious intelligence-gathering activities conducted by Health IQ.  (SAC ¶ 138.)  According to the allegations in the SAC, Teva has obtained FDA approval for Neutroval and would be receiving the economic advantage of selling Neutroval in the United States but for the terms of the settlement and judgment in the patent action, which prohibit it from marketing or selling the drug until November 2013.  (SAC ¶¶ 136–37.)  Specifically, Teva alleges that "Amgen's course of conduct has disrupted Teva's relationship with its customers by, among other things, delaying Neutroval's market entry."  (SAC ¶ 140.)  Teva seeks to recover economic damages, punitive damages, disgorgement of the Amgen Defendants' ill-gotten gains, and equitable remedies.  (SAC ¶¶ 143–44.)

Teva moves to remand the action to state court, arguing that this matter involves only state law claims and the Court accordingly lacks subject matter jurisdiction.  (Dkt. No. 34 ["Pls.' Remand Mot."].)  Defendants Amgen Canada and Amgen Europe move to

dismiss the SAC for lack of personal jurisdiction, and all Amgen Defendants move to dismiss the SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## ANALYSIS

### I.   Teva's Motion to Remand

A defendant may remove a civil action filed in state court to a federal district court if the case originally could have been filed in federal court.  28 U.S.C. § 1441(a); *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987).  The removal statute is "strictly construe[d] . . . against removal jurisdiction," and the court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The burden of establishing subject matter jurisdiction falls on the defendant.  *Id.*

Under 28 U.S.C. § 1331, federal courts have federal question jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case "arises under" federal law when (1) federal law creates the cause of action asserted, or (2) a state law cause of action necessarily involves a substantial federal issue.  *Gunn v. Minton*, 133 S. Ct. 1059, 1064–65 (2013).  The jurisdictional basis must appear on the face of the plaintiff's well-pleaded complaint.  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  The Ninth Circuit has recognized that "an action to obtain relief from a federal judgment presents a general federal question, which may support removal to federal court."  *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 778 (9th Cir. 1994) (upholding removal of a state action in which the plaintiffs sought damages for injury to natural resources caused by the Exxon Valdez oil spill despite a prior federal consent decree judgment covering the same claims).  If federal question

jurisdiction exists, a district court may assert supplemental jurisdiction over state law claims when the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

Here, Teva's action presents a federal question supporting removal to federal court. Teva's fifth cause of action for tortious interference with prospective economic advantage is, in effect, seeking damages and other relief for complying with the final judgment and injunction entered in the prior patent action between Teva and Amgen in the United States District Court for the Eastern District of Pennsylvania.  That judgment and injunction specifically found that Teva's Neutroval product infringes Amgen's patents and enjoined Teva from selling Neutroval in the United States until November 10, 2013.  (Defs.' Mot. to Dismiss at 2–3; Exhs. A–C.)  Nevertheless, Teva now seeks damages and relief from the Amgen Defendants on the grounds that Amgen "extract[ed] a settlement of the patent action on favorable terms" by virtue of engaging in alleged industrial espionage.  (SAC ¶¶ 138.)  The heart of Teva's claim is that complying with the terms of the stipulated judgment and injunction has caused it injury because it has "disrupted Teva's relationship with its customers by, among other things, delaying Neutroval's market entry."  (SAC ¶ 140.)  Although Teva argues that it is not expressly seeking to set aside the judgment and injunction in the prior patent case, recovering damages for complying with the prior federal judgment and injunction, which incorporated the terms of the settlement, is a blatant collateral attack on the judgment and injunction.  Indeed, it nullifies the judgment and injunction and makes them an absurdity. If Teva wants relief from the Pennsylvania district court's judgment and injunction, it must appear before that court and make the appropriate motion under Federal Rule of Civil Procedure 60(b).  *See F.D.I.C. v. Aaronian,* 93 F.3d 636, 639 (9th Cir. 1996) (Rule 60(b) motions may be filed in either the district court that issued the judgment or in a district where the judgment has been registered for enforcement).  The Court will not

allow Teva to obtain the relief here.  In any event, Teva's fifth cause of action for tortious interference with prospective economic advantage as pled in the SAC presents a federal question that supports the Amgen Defendants' removal of the action to this Court.  *See Eyak*, 25 F.3d at 778 ("[S]uch an action involves the validity of the judgment, and the substantive principles of the action are federal.") (quoting 7 James W. Moore et al., *Moore's Federal Practice* ¶¶ 60.38[1] (2d ed. 1993)).[1]

## II.     Amgen Canada and Amgen Europe's Motions to Dismiss for Lack of Personal Jurisdiction

Amgen Canada and Amgen Europe each move to dismiss the SAC for lack of personal jurisdiction on the grounds that they do not have sufficient minimum contacts with California.  Because the same jurisdictional facts apply to both parties, and their motions are in fact nearly identical, the Court discusses these motions together.

A plaintiff has the burden of establishing that personal jurisdiction exists over a defendant.  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003) (citing *John Doe I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).  When the plaintiff's version of the facts is not directly controverted, it is taken as true for the purposes of a Rule 12(b)(2) motion.  *Id*.  Conflicts between the facts in the parties' affidavits are resolved in the plaintiff's favor.  *Id*.  Where there is no federal statute controlling the exercise of personal jurisdiction, federal courts must look to the forum state's long-arm jurisdictional statute to determine whether it is proper to assert personal jurisdiction.  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09 (9th Cir. 2010).  The California long-arm statute provides that "[a] court of this state may

---

[1]  Given that Teva's state law claims all arise from the same common nucleus of operative fact regarding the alleged wrongful acquisition of Teva's proprietary information, the Court also has discretion to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(a).

exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Civ. Proc. Code § 410.10.  Thus, the jurisdictional analysis under California law and federal due process is the same.  *Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

The Due Process Clause permits a court to exercise personal jurisdiction over a defendant only if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  A court may exercise general jurisdiction over a defendant whose contacts with the forum are so "continuous and systematic" that personal jurisdiction is proper in any action.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985).  Absent general jurisdiction, a court may also exercise specific jurisdiction over a defendant where "jurisdiction [is] based on the relationship between the defendant's forum contacts and the plaintiff's claim."  *Yahoo!*, 433 F.3d at 1205.  California courts recognize the commission of a tortious act within the state's borders as a sufficient basis for the exercise of personal jurisdiction.  *In re Automobile Antitrust Cases I & II*, 135 Cal. App. 4th 100, 123 (2005).  The Ninth Circuit has set out a three-prong test for analyzing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  If the plaintiff satisfies its burden of showing the first two prongs, the burden shifts to the defendant to show a "compelling case" that the exercise of jurisdiction would not be reasonable.  *Id.*  For purposes of establishing personal jurisdiction, the forum-related actions of an agent are attributable to the principal.  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).

Amgen Canada and Amgen Europe's relevant forum-related activities include attending meetings at Health IQ's headquarters in Orange County, California "to direct the unlawful spying on Teva," and making payments to Health IQ in California for competitive intelligence activities directed at Teva.  (SAC ¶ 18.)  Each defendant individually paid Health IQ for the alleged industrial espionage projects.  Amgen Canada submitted purchase orders to Health IQ totaling $154,715,  (Dkt. No. 57 ["Benz Decl. ISO Opp'n Amgen Canada Mot."] ¶¶ 2–5), and Amgen Europe submitted purchase orders totaling $260,000, (Dkt. No. 66 ["Benz Decl. ISO Opp'n Amgen Europe Mot."] ¶¶ 2–5). Further, the SAC alleges that Amgen Canada and Amgen Europe directed Health IQ to perform tortious acts in California, including making telephone calls to current and former Teva employees in California and approaching a Teva employee at a trade show in Irvine, California, to misappropriate proprietary trade information.  (*See* Benz Decl. ¶¶ 20–21; SAC ¶¶ 99–150.)  These allegations establish that Amgen Canada and Amgen Europe purposefully availed themselves of the privileges of conducting activities in California and purposefully directed their activities at California, including allegedly committing tortious acts in California.  Further, the claims asserted by Teva in this action are all based on alleged theft of information and unlawful competitive tactics employed by Health IQ on behalf of the Amgen defendants, including Amgen Canada and Amgen Europe.  These claims directly arise from and relate to Amgen Canada and Amgen Europe's forum-related activities in California.  In addition, neither Amgen Canada nor

Amgen Europe has asserted persuasive reasons why they cannot litigate in this forum, apart from standard concerns that would be present in any case involving a foreign defendant.  Given that they have not shown a "compelling case" that exercising jurisdiction would be unreasonable, these defendants are subject to the Court's personal jurisdiction.[2]

## III.    The Amgen Defendants' Motion to Dismiss for Failure to State a Claim

The Amgen Defendants jointly move to dismiss all six causes of action in the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  In considering whether to dismiss a case for failure to state a claim, the issue before the court is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### a.  CUTSA Preemption

The Amgen Defendants argue that Teva's non-trade secret claims are preempted

---

[2]  Because the Court finds specific jurisdiction over Amgen Canada and Amgen Europe, it need not reach Teva's contention that these defendants are also subject to general jurisdiction.

by the California Uniform Trade Secrets Act ("CUTSA").  The CUTSA generally preempts state law claims that are "based on the same nucleus of facts as the misappropriation claim."  *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (claims for breach of confidence, interference with contract, and unfair competition preempted by CUTSA); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (unfair competition and unjust enrichment claims preempted by CUTSA).  In California, the CUTSA provides "the exclusive civil remedy" for conduct "based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), *disapproved of on other grounds*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).  The CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret.  *See Silvaco*, 184 Cal. App. 4th at 239 n.2; *Mattel, Inc. v. MGA Entm't, Inc. & Consol. Actions*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2010) ("UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.").

Teva's claims for violation of California's UCL, common law fraud, "deceit" under California Civil Code sections 1709 and 1710, tortious interference with prospective economic advantage, and civil conspiracy are all based on the same set of facts as its misappropriation of trade secrets claim; namely, alleged theft of Teva's proprietary information by Health IQ and the Amgen Defendants.  Teva's fraud claim is based on alleged false statements by Health IQ and the Amgen Defendants that caused "certain people with confidentiality obligations [to] disclose[] Teva's confidential information to Defendants."  (SAC ¶ 122.)  Teva's claim for violation of California's UCL is based on alleged "unfair conduct" by the Amgen Defendants and Health IQ which Teva claims consisted of "obtaining and/or attempting to obtain Teva's property

(including information)[3] through improper and unethical means." (SAC ¶ 103.) In support of its "deceit" claim, Teva alleges that "Defendants' agents intentionally concealed their true identities as spies to obtain property from Teva, including but not limited to collecting Teva's confidential, proprietary, and trade secret information." (SAC ¶ 128.) In addition, Teva's tortious interference with prospective economic advantage claim is based on allegations that the Amgen Defendants obtained "confidential, proprietary, and competitively sensitive information" through their "wrongful conduct" and were thereby able to "extract a settlement of the patent action on favorable terms." (SAC ¶ 138.) Teva's UCL, fraud, deceit, and tortious interference claims are all based on the same common nucleus of operative fact regarding unlawful "theft of information" and are therefore preempted by the CUTSA.[4] Teva's sixth claim for civil conspiracy is not an independent cause of action under California law but merely derivative of its other claims; therefore, it too fails because of CUTSA preemption. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994).

**b. Misappropriation of Trade Secrets**

The Amgen Defendants also move to dismiss Teva's misappropriation of trade secrets cause of action for failure to state a claim. A cause of action for misappropriation of trade secrets under the CUTSA requires proof of the following elements: "(1) possession by the plaintiff of a trade secret; (2) the defendant's misappropriation of the trade secret, meaning its wrongful acquisition, disclosure, or use; and (3) resulting or threatened injury to the plaintiff." *Silvaco Data Sys.*, 184 Cal. App. 4th at 220; Cal. Civ.

---

[3]  Although Teva implies that "property" apart from information was stolen, this allegation is conclusory to the extent that no property is identified in the SAC.

[4]  The claim for tortious interference with prospective economic advantage is subject to dismissal for the additional reason that it constitutes an impermissible collateral attack on the final judgment and injunction entered by the United States District Court for the Eastern District of Pennsylvania in the prior patent action. *See Treadaway v. Acad. of Motion Picture Arts & Sciences*, 783 F.2d 1418, 1421–22 (9th Cir. 1986).

Code §§ 3426.1–3426.3.  Information constitutes a "trade secret" if it (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use," and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).

Although the SAC states that Teva's "confidential and proprietary information relating to TevaGrastim/Neutroval, Neugranin, XM22 and future products" qualifies as protected "trade secrets," few, if any, non-conclusory allegations are provided in support of this claim.  The SAC states that the information at issue "is subject to reasonable efforts to maintain its secrecy and is treated secret by Teva,"  but fails to outline any steps taken to protect the information, such as limiting access to the information or advising employees of its confidential nature.  This factual support is especially important here, given that Teva seeks trade secret protection for information that — according to a plausible reading of the SAC — Teva would readily disclose to non-employees such as graduate students requesting the information for research purposes or physicians with whom Teva has no contractual relationship.  (*See* SAC ¶¶ 35–37, 53–61.)  Further, to the extent that the information had already been disclosed to members of the public it would lose its trade secret status.  *See In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 303–05 (2002) (holding that telemarketing scripts were not trade secrets because they had been disclosed to defendant's customers without any confidentiality obligation).  Finally, Teva does not sufficiently allege actual misappropriation of any of the information for which trade secret protection is claimed.  Although the SAC alleges Health IQ *attempted* to acquire information from Teva, it is not clear what information, if any, was actually disclosed in response to those attempts.[5]  Accordingly, there is no factual basis for the

---

[5]  The only allegations that may be construed as showing actual disclosure of information involved Teva's "organizational information," meaning "names of several Teva employees who would have [product information] and their positions within the company."  (*See* SAC ¶ 49.)  This information was allegedly disclosed over the telephone to an individual identifying herself as "Roxanne."  (SAC ¶ 49.)

Amgen Defendants' alleged "misappropriation," that is, acquisition, disclosure, or use, of Teva's information.  Given these defects, Teva fails to adequately state a claim for misappropriation of trade secrets.

## CONCLUSION

For the foregoing reasons, Teva's Motion to Remand is DENIED; Amgen Canada's and Amgen Europe's Motions to Dismiss for Lack of Personal Jurisdiction are DENIED; the Amgen Defendants' Motion to Dismiss for Failure to State a Claim is GRANTED.  Teva's Second Amended Complaint is DISMISSED WITH LEAVE TO AMEND.  Teva shall file an amended complaint within twenty (20) days of the date hereof that is consistent with this Order.

DATED:     April 29, 2013

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

Teva does not allege that this information had independent economic value or that it led to the disclosure of trade secret information.

-14-